UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DANIELLE SNODGRASS, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | _____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| INDEPENDENT PHYSICIANS | : | |
| RESOURCE, INC. AND | : | |
| APOLLOMD, INC. | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Danielle Snodgrass hereby files this Complaint against Independent

Physicians Resource, Inc. and ApolloMD, Inc. (collectively "ApolloMD" or

"Defendants") alleging violations of the Americans with Disabilities Act, as

amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101

*et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42

U.S.C. § 2000e *et seq.*, and for breach of contract under Georgia law and attorneys'

fees under O.C.G.A. § 13-6-11.

## Introduction

1.    Ms. Snodgrass is an accomplished Registered Radiologist Assistant

and was a dedicated, hardworking employee.  After Defendants became her

employer, however, Snodgrass was targeted and routinely treated differently because of her disability and gender.  Defendants believed that Ms. Snodgrass's disability caused her to have "chemo brain," which they falsely believed affected her ability to do her job, and Defendants stated as such.  Because they believed that Ms. Snodgrass could not do her job because of her disability, Defendants reduced Ms. Snodgrass's hours, changed her job duties, paid her less than a non-disabled male Radiology Assistant who was hired to fill in for her while she was on medical leave and, finally, terminated her for a pretextual reason.  Further, Defendants refused to pay Ms. Snodgrass money owed to her under her Physician Extender Employment Agreement.

2.      This is an action under the ADAAA, Title VII, and Georgia law to correct unlawful employment practices on the basis of disability and gender, and breach of contract, to vindicate Ms. Snodgrass's rights, and to make her whole.

## Jurisdiction and Venue

3.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12101 *et seq.*, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. §§ 1331 and 1367.

4.      Defendant ApolloMD, Inc. resides in the Northern District of Georgia within the meaning of 28 U.S.C. § 1391(c).  Venue is therefore proper in the

Northern District of Georgia under 28 U.S.C. § 1391(b).

5.    Defendant Independent Physicians Resource, Inc. resides in the Northern District of Georgia within the meaning of 28 U.S.C. § 1391(c).  Venue is therefore proper in the Northern District of Georgia under 28 U.S.C. § 1391(b).

## Parties

6.    Plaintiff is a citizen of the State of Georgia and resident of Troup County, LaGrange, Georgia.

7.    Plaintiff submits herself to the jurisdiction of this Court.

8.    Ms. Snodgrass is, and at all times relevant hereto was, an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

9.    Ms. Snodgrass is a person with a disability because she suffers from an actual physical impairment that substantially limits her in a major life activity, because she has a record of impairment, and because Defendants regarded her as having an impairment.

10.    Defendants were aware of Ms. Snodgrass's physical impairment.

11.    Ms. Snodgrass is and, at all times relevant hereto, was capable of performing the essential functions of her position with Defendants without an accommodation.

12.     Defendant ApolloMD, Inc. is a Georgia corporation with its principal office located at 5665 New Northside Drive, Suite 320, Atlanta, Georgia 30328 and may be served through its registered agent for service of process, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

13.     Defendant ApolloMD has more than fifteen (15) employees and is an employer with the meaning of Title VII and the ADAAA.

14.     Defendant Independent Physicians Resource, Inc. is a Georgia corporation with its principal office located at 5665 New Northside Drive, Suite 320, Atlanta, Georgia 30328 and may be served through its registered agent for service of process, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

15.     Defendant Independent Physicians Resource, Inc. has more than fifteen (15) employees and is an employer with the meaning of Title VII and the ADAAA.

## Administrative Proceedings

16.     Ms. Snodgrass filed a charge and amended charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains.

-4-

17.     Ms. Snodgrass received a Notice of Right to Sue from the EEOC relating to her charge and amended charge, and this civil action is filed in the appropriate federal district court within ninety (90) days of receipt of her notice of right to sue.

### Statement of Facts

18.     Ms. Snodgrass is a Registered Radiologist Assistant ("RRA"), a medical professional who provides assistance to radiologists in hospital settings.

19.     Ms. Snodgrass has been a successful RRA for seven years.

20.     From November 2006 through August 2009, Ms. Snodgrass was employed by West Georgia Health Systems ("WGHS") as an RRA.

21.     Ms. Snodgrass was a valued employee of WGHS and her performance was exemplary.

22.     Originally, WGHS contracted directly with employees.

23.     Defendant ApolloMD/Independent Physicians Resource is a corporation that contracts with both hospitals and medical professionals to staff medical professionals, including RRAs, at specific hospital locations.

24.     In August 2009, ApolloMD began contracting to provide radiology services to WGHS and, at that time, took over Ms. Snodgrass's contract with

WGHS through a contract between Ms. Snodgrass and Independent Physicians Resource (an ApolloMD company).

26. In connection with the transfer of Ms. Snodgrass's employment to ApolloMD and Independent Physicians Resources, Inc., Ms. Snodgrass filled out and signed an Application for Employment with "Independent Physicians Resource, Inc. (ApolloMD)."

26. At that time, Ms. Snodgrass also executed an Application form Waiver with "Independent Physicians Resource, Inc. (ApolloMD)."

27. Also at the same time, Ms. Snodgrass also executed a Nondisclosure Agreement with "ApolloMD (or any subsidiary or affiliate thereof)."

28. Ms. Snodgrass's contract, entitled "Physician Extender Employment Agreement" provided, in part, that she was entitled to ninety days' written notice of termination of the contract for any reason.

29. When ApolloMD took over Ms. Snodgrass's contract, Dr. Paul Forsyth became WGHS's Director of Radiology.

30. ApolloMD's Vice President of Operations was, at all times relevant, Ginni Viscardi.

31.     Ms. Snodgrass submitted her timesheets to ApolloMD/Independent Physicians Resource, Inc.

32.     Ms. Snodgrass's benefits statements were provided by ApolloMD and "IPR."

33.     In February 2010, Ms. Snodgrass found a lump in her breast, which her physician ordered her to have biopsied.

34.     In order to have the biopsy, Ms. Snodgrass requested a day off from work.

35.     In response, Dr. Forsyth told Ms. Snodgrass that the only reason she was having a biopsy was because she worked at the WGHS hospital.

36.     Ultimately, in February 2010, Ms. Snodgrass was diagnosed with breast cancer and took a medical leave of absence on March 3, 2010 to receive treatment.

37.     Ms. Snodgrass was informed that a male Radiology Assistant, Kevin Quinn, was going to be hired part-time to fill in while she was out on leave from March to April of 2010.

38.     Plaintiff was cleared to return to work on April 26, 2010.

39.     Upon being released to work, Ms. Snodgrass contacted Thea Dellinger, Vice President of Human Resources for PaymentsMD/ApolloMD (ApolloMD's internal payroll processing company), to inform Defendants that she was cleared to return to work.

40.     Ms. Dellinger told Ms. Snodgrass that she could not return to work because she could only work part time.

41.     Ms. Snodgrass told Ms. Dellinger that was not the case, and that she was released to return full time and desired to return full time.

42.     Ms. Snodgrass's physician faxed her FMLA form to ApolloMD indicating that she could return full time with the exception of two days that she would need to attend chemotherapy treatments.

43.     Ms. Dellinger claimed that she did not receive the fax that Ms. Snodgrass's doctor sent.

44.     On May 10, a representative from PaymentsMD/ApolloMD contacted Ms. Snodgrass and informed her that Ms. Dellinger had instructed PaymentsMD that Ms. Snodgrass was not cleared to return to work, despite the fact that Ms. Snodgrass had communicated to Ms. Dellinger that she could return to work full time.

-8-

45.     As of May 12, Ms. Snodgrass had not been added to the work schedule.

46.     On May 12, Ms. Snodgrass sent a letter to Ms. Dellinger, detailing that she could return to work full time.

47.     On May 18, 2010, Ms. Snodgrass was told that she could return to work on May 20.

48.     At that time, however, Ms. Snodgrass was told that her hours were reduced from 40 hours per week to 32 hours per week.

49.     Additionally, Ms. Snodgrass was told that rather than returning to her original location - the main hospital - she was to report to a different location, the Women's Health Center ("WHC").

50.     Ms. Snodgrass was also told that Kevin Quinn was going to continue working for ApolloMD and that her hours were reduced because they could not pay both her and Mr. Quinn for 40 hours per week.

51.     Mr. Quinn was assigned Ms. Snodgrass's former position at the main hospital.

52.     Ms. Snodgrass again had to take medical leave from ApolloMD in October 2010 for medical procedures related to her disability, and returned in November 2010.

53.     After her return from her second medical disability leave, Ms. Snodgrass continued to be treated differently than male and/or non-disabled colleagues.

54.     For instance, Ms. Snodgrass was reprimanded for missing meetings, whereas Mr. Quinn missed meetings and was not reprimanded.

55.     Additionally, Ms. Snodgrass learned that Mr. Quinn was paid a substantially higher hourly rate than she was, despite the fact that he had less education than Ms. Snodgrass, did not have as many certifications as Ms. Snodgrass, could not perform or assist with as many procedures as Ms. Snodgrass, and had less tenure with Defendants and/or WGHS.

56.     Ms. Snodgrass also learned that Mr. Quinn was assigned to work 40 hour work weeks, whereas she continued to be allowed to work only 32 hours.

57.     In March 2011, Ms. Snodgrass had reconstructive surgery related to her disability and had to take medical leave for one week.

58.     Ms. Snodgrass continued to be treated differently than her non-disabled, male counterpart after she returned from leave.

59.     After returning to work from the reconstructive surgery, Ms. Snodgrass was told that she could no longer do medication reconciliation forms on patients before their procedures, a task she had done for six years and which is now handled by a medical technician with no degree.

60.     Ms. Snodgrass was forced to contact her school in Texas to obtain written confirmation that she was trained in this area.

61.     ApolloMD hired a new Medical Director, Dr. William Ferris, in August 2011.

62.     From the outset, Dr. Ferris also treated Ms. Snodgrass disparately because of her disability and gender.

63.     For instance, Ms. Snodgrass learned that Dr. Ferris called her "chemo brain" and "goofy" on multiple occasions.

64.     Ultimately, on July 2, 2012, Ms. Snodgrass was terminated by Ginny Viscardi, ApolloMD's Vice President of Operations Radiology/ER, at the direction of Dr. Ferris.

65.     At the time of her termination, Defendants told Ms. Snodgrass that they "were going in a different direction" and no longer needed her services.

66.     Dr. Bass, a radiologist who directly supervised Ms. Snodgrass at the WHC, later told Ms. Snodgrass that Dr. Ferris said he had to fire her because "she has chemo brain."

67.     Ms. Snodgrass was not given ninety days' written notice, which was due to her pursuant to her Physician Extender Employment Agreement with Defendants.

68.     Defendant ApolloMD filled out Ms. Snodgrass's Separation Notice after her termination and filed it with the State of Georgia Department of Labor on July 12, 2012.

69.     On August 3, Defendants informed Ms. Snodgrass that she would not be paid the severance owed to her as a result of their failure to provide ninety days' notice due and owing to her under her Physician Extender Employment Agreement unless she signed an agreement releasing all of her claims against Defendants.

70.     On August 7, 2012, Ms. Snodgrass contacted Defendants through counsel and informed them that she would not sign the release and that she believed that she continued to be discriminated and retaliated against because she

-12-

could not be required to sign a release of her claims in order to receive her separation payment owed to her under her Physician Extender Employment Agreement.

71.    Ms. Snodgrass included a copy of the Charge of Discrimination she intended to file with the Equal Employment Opportunity Commission with her August 7 correspondence.

72.    Defendants' counsel acknowledged receipt of Ms. Snodgrass's communication on August 9, 2012.

73.    Hearing nothing further from Defendants, Ms. Snodgrass filed her first Charge of Discrimination on August 21, 2012.

74.    On August 28, 2012, Defendants contacted Ms. Snodgrass directly and informed her that because she did not sign the general release of all of her claims, they would not be paying her the separation payment due and owing to her under the Physician Extender Employment Agreement.

**COUNT I**
**<u>Violation of ADAAA - Regarded as Disabled</u>**

75.    Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

76.     Ms. Snodgrass is and, at all times relevant hereto, was disabled as defined by the ADAAA, 42 U.S.C. § 12102(1)(C), because Defendants regarded her as a person with an impairment as defined by the ADAAA.

77.     At all times relevant hereto, Ms. Snodgrass has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of the RRA job as advertised.

78.     Defendants are employers as defined by the ADAAA.

79.     At all times relevant hereto, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

80.     Despite her qualifications for the position of RRA, Plaintiff's job duties, hours, and responsibilities were reduced in favor of a non-impaired, non-disabled person.

81.     Despite her qualifications for the position of RRA, Defendants intentionally terminated Ms. Snodgrass because they regarded her as impaired in favor of a non-impaired, non-disabled person.

82.     Specifically, Dr. Ferris said that he had to terminate Ms. Snodgrass because "she has chemo brain."

-14-

83.     Defendants' actions in discriminating against Ms. Snodgrass and terminating her employment are a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

84.     As a direct and proximate result of Defendants' intentional discrimination, Ms. Snodgrass has suffered out-of-pocket losses and Defendants have deprived Ms. Snodgrass of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, all in an amount to be established at trial.

85.     In addition, Defendants' actions have caused, continue to cause, and will cause Ms. Snodgrass to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

86.     Ms. Snodgrass is entitled to be reinstated to employment by Defendants and, if reinstatement is not feasible, Ms. Snodgrass is entitled to an award of damages for future lost wages and benefits of employment.

**COUNT II**
**<u>Violation of ADAAA - Actual Disability and Record of Disability</u>**

-15-

87.     Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

88.     Because she suffers from breast cancer, Ms. Snodgrass is and, at all times relevant hereto, was disabled as defined by the ADAAA, 42 U.S.C. § 12102(1)(A) and (B), because she suffers from a physical impairment that substantially limits one or more major life activities and she has a record of such impairment.

89.     At all times relevant hereto, Ms. Snodgrass has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of the RRA job as advertised.

90.     Defendants are employers as defined by the ADAAA.

91.     At all times relevant hereto, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

92.     Despite her qualifications for the position of RRA, Plaintiff's job duties, hours, and responsibilities were reduced in favor of a non-impaired, non-disabled person after she returned from medical leave and while she continued to take medical leave for treatment of her breast cancer.

93.     Despite her qualifications for the position of RRA, Defendants intentionally terminated Ms. Snodgrass because of her disability in favor of a non-impaired, non-disabled person.

94.     Specifically, Dr. Ferris said that he had to terminate Ms. Snodgrass because "she has chemo brain."

95.     Defendants' actions in discriminating against Ms. Snodgrass and terminating her employment are a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

96.     As a direct and proximate result of Defendants' intentional discrimination, Ms. Snodgrass has suffered out-of-pocket losses and Defendants have deprived Ms. Snodgrass of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, all in an amount to be established at trial.

97.     In addition, Defendants' actions have caused, continue to cause, and will cause Ms. Snodgrass to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

-17-

98.   Ms. Snodgrass is entitled to be reinstated to employment by Defendants and, if reinstatement is not feasible, Ms. Snodgrass is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT III
## Violation of Title VII - Gender Discrimination

99.   Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

100.   Ms. Snodgrass is a member of a protected class and was denied equal employment and compensation opportunities by Defendants because of her sex.

101.   The employment relationship between Ms. Snodgrass and Defendants give rise to a cause of action for gender discrimination.

102.   Throughout her employment, Defendants treated Ms. Snodgrass less favorably than her male counterparts.

103.   For instance, Defendants paid Ms. Snodgrass less than her less experienced male comparator, Kevin Quinn, gave her fewer working hours than Mr. Quinn, removed her from her work location in favor of Mr. Quinn, and terminated Ms. Snodgrass for engaging in conduct in which Mr. Quinn also engaged.

104.   Defendants' above-pled discriminatory conduct toward Ms. Snodgrass constitutes gender discrimination in violation of Title VII.

105.   Defendants acted with malice or with reckless indifference to the federally protected rights of Ms. Snodgrass.

106.   As a result of Defendants' unlawful actions, Ms. Snodgrass has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

107.   Ms. Snodgrass is entitled to an award of back pay and benefits, compensatory and punitive damages, attorneys' fees, and all other appropriate damages, remedies, and other relief under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT IV
## Violation of Title VII and the ADAAA - Retaliation

108.   Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

109.   Defendants' action in refusing to pay Ms. Snodgrass the separation payment due and owing to her under her Physician Extender Employment Agreement because she did not sign the general release of all of her claims was

committed with reckless disregard for Ms. Snodgrass's right to be free from retaliatory treatment on account of her opposition to discriminatory practices in violation of Title VII and the ADAAA.

110.   The actions Defendants took against Ms. Snodgrass have caused her to suffer both monetary and non-monetary damages.

111.   Ms. Snodgrass is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of her rights under Title VII and the ADAAA.

## COUNT V
## Breach of Contract

112.   Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

113.   ApolloMD provided Ms. Snodgrass with a contract between herself and Independent Physicians Resource, Inc. called a Physician Extender Employment Agreement (the "Contract").

114.   The Physician Extender Employment Agreement is a valid contract that is binding on Independent Physicians Resource, Inc.

115.   Under the Contract, Ms. Snodgrass was entitled to ninety days' notice of the termination of her Contract.

116.   Under the clear and express terms of the Contract, Ms. Snodgrass is entitled to ninety days' notice or payment of her salary and benefits for ninety days in the event Independent Physicians Resource, Inc. terminates the Contract without notice.

117.   Independent Physicians Resource, Inc. failed to provide Ms. Snodgrass with ninety days' notice of the termination of her Contract or payment for ninety days' in lieu of notice.

118.    Independent Physicians Resource, Inc. willfully breached the Contract with Ms. Snodgrass.

119.   Independent Physicians Resource, Inc. acted in bad faith in violating its Contract with Ms. Snodgrass.

120.   Independent Physicians Resource, Inc. is liable to Ms. Snodgrass for breach of contract in the amount of $21,656.88, plus prejudgment interest accruing from July 2, 2012.

## COUNT VI
## Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11

121.   Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

122.   Independent Physicians Resource, Inc.'s conduct in breaching Ms. Snodgrass's contract was in bad faith and based on her refusal to release her federal claims against itself and ApolloMD for their violation of the ADAAA and Title VII.

123.   In refusing to honor its contractual obligations and refusing to pay Ms. Snodgrass the amount she is owed, Independent Physicians Resource, Inc. has been stubbornly litigious, causing Ms. Snodgrass unnecessary trouble and expense.

124.   Pursuant to O.C.G.A. § 13-6-11, Independent Physicians Resource, Inc. is liable for Ms. Snodgrass's expenses of litigation, including attorney's fees and costs.

## **PRAYER FOR RELIEF**

Plaintiff requests a trial by jury on all issues and respectfully requests the following relief:

(a)   Judgment in Plaintiff's favor and against Defendants under all counts of this Complaint;

-22-

(b)     Plaintiff's out-of-pocket losses as well as back pay in an amount equal
        to the sum of any wages, salary, employment benefits or other
        compensation denied or lost as a result of Defendants' unlawful and
        discriminatory acts, together with interest thereon, all in an amount to
        be proven at trial;

(c)     Reinstatement and/or front pay, including lost wages and benefits of
        employment;

(d)     Compensation for mental and emotional damages suffered as a result
        of Defendants' unlawful and discriminatory acts in violation of the
        ADAAA and Title VII;

(e)     Punitive damages for Defendants' willful and intentional violations of
        the ADAAA and Title VII;

(f)     Damages for Defendants' breach of contract in the amount of
        $21,656.88, plus prejudgment interest accruing from July 2, 2012;

(g)     Attorney's fees incurred as a result of Defendants' bad faith and
        stubborn litigiousness;

(h)     Reasonable attorney's fees and court costs under the ADAAA and
        Title VII;

-23-

(i)     Prejudgment interest; and

(j)     Such further equitable and monetary relief as the Court deems proper

and just.

Respectfully submitted,

BUCKLEY & KLEIN, LLP

By:     <u>s</u>/Cheryl B. Legare
Georgia Bar No. 038553
cblegare@buckleyklein.com
Jaime L. Duguay
Georgia Bar No. 829447
jlduguay@buckleyklein.com

Suite 900, 1230 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone: 404-781-1100
Facsimile: 404-781-1101

Counsel for Plaintiff