IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DANIELLE SNODGRASS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| v. | ) | **NO. 1-13-CV-03958-AJB-SCJ** |
| | ) | |
| INDEPENDENT PHYSICIANS | ) | |
| RESOURCE, INC. AND | ) | |
| APOLLOMD, INC. | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

COME NOW, Independent Physicians Resource, Inc. and ApolloMD, Inc., Defendants in the above-styled action, pursuant to Federal Rule of Civil Procedure 72 and Local Rule 72, and file these, their Objections to the Magistrate Judge's Report and Recommendation (hereinafter "R&R"), entered on December 7, 2015.

Defendants agree with the R&R on all grounds, with the exception of three findings.  First, Defendants respectfully submit that the R&R incorrectly found that Plaintiff's claims related to her transfer to the Women's Center (which carried with it a reduction in work hours from 40 hours per week to 32 hours per week) state a continuing violation under the Lilly Ledbetter Act.  Defendants also respectfully submit that the R&R incorrectly found that Plaintiff could establish a *prima facie*

case of discrimination based on her transfer to the Women's Center.  Finally, Defendants respectfully submit that, while the R&R correctly found that there was no evidence of pretext and that Defendants were entitled to summary judgment as to Plaintiff's claims arising out of her transfer to the Women's Center, additional reasons support the decision which were not identified in the R&R.

### A.    Plaintiff's Transfer Was Not A Continuing Violation

Defendants respectfully disagree with the R&R's conclusion that Plaintiff's transfer to the Women's Center in May of 2010, which carried with it a reduction in work hours, is a continuing violation under the ADA based upon the Lilly Ledbetter Act, and that Plaintiff therefore has not waived or failed to exhaust any claim arising out of the transfer's reduction in hours.[1]

In reaching this decision, the R&R expressly recognized that (1) district courts that have ruled on this subject all have found that a transfer with an associated reduction in hours is a discrete act and not a continuing violation; and (2) the Lilly Ledbetter Act "does not undermine…the other district courts' pre-Act determination that a simple claim for reduction in hours is not renewed with each

---

[1] It is noteworthy that the R&R recognized that Plaintiff has not presented a strong legal argument to support this position, and that the case she cites to, Callaway v. Partners National Health Plans, 986 F.2d 446, 448-449 (11th Cir. 1993), is only "minimally persuasive" and "did not contemplate any allegations of discrimination in the number of hours assigned to hourly employees." [Doc. 116, p. 39].

paycheck reduced by the allegedly discriminatory decision." [Doc. 116, p. 40-41]. Nonetheless, the R&R found that the present case warranted a different treatment, relying upon the Second Circuit case of <u>Davis v. Bombadier Transportation Holdings (USA), Inc.</u>, 794 F.3d 266, 269-271 (2d Cir. 2015).

The <u>Davis</u> case arose out of an alleged discriminatory demotion, which carried with it a reduction in pay of seventy-five cents ($.75) for each hour worked. <u>Id.</u> at 268-69.   The court in <u>Davis</u> found that "the Ledbetter Act does not encompass a claim of a discriminatory demotion decision that results in lower wages where, as here, the plaintiff has not offered any proof that the compensation itself was set in a discriminatory manner.   A plaintiff must plead and prove the elements of a pay-discrimination claim to benefit from the Ledbetter Act's accrual provisions." <u>Id.</u> at 269.   The <u>Davis</u> case then went on to state, "since the *Ledbetter* decision specifically dealt with a pay-discrimination claim that was cognizable without regard to other adverse employment actions, we find that the Ledbetter Act's reference to 'discrimination in compensation' was to traditional pay-discrimination claims rather than to a pay reduction that flows from another adverse employment action." <u>Id.</u> at 271.

In other words, the court in <u>Davis</u> concluded that a demotion claim (which results in a change in pay) is a discrete act rather than a continuing violation, and that the only way to plead a claim protected by the Ledbetter Act's accrual provisions is to plead a traditional pay discrimination claim. <u>Id.</u> at 269-270. Finally, in dicta, the court in <u>Davis</u> noted that the plaintiff had not alleged that her demotion resulted in her being paid less than a similarly situated individual in the same position.  Thus, the court in <u>Davis</u> implied that, if the plaintiff had alleged that she made less money than another individual in her demoted position, that would state a traditional pay discrimination claim (not a discriminatory demotion case) which could be covered by the Lilly Ledbetter Act.  <u>Id.</u> at 271.

## 1. Reliance On The *Davis* Case Is Misplaced And Improperly Converts Plaintiff's Discriminatory Transfer Claim Into A Pay Discrimination Claim

Relying upon the <u>Davis</u> decision, the R&R concluded that the decision to reduce Plaintiff's hours as a result of her transfer was a continuing violation under the Ledbetter Act's provisions because Plaintiff claims that she thought her purported comparator, Mr. Quinn, also was paid for and worked 32 hours per week.   Thus, the R&R concluded that the claim was subject to the accrual / continuing action treatment under the Ledbetter Act until she purportedly found out that Mr. Quinn was working 32 hours per week but was paid for working 40

hours a week.  [Doc. 116, p. 44].  The R&R then concluded that the transfer claim could fall under the "generous accrual provisions of the Ledbetter Act and may not, at this point in litigation, be deemed untimely as a matter of law." [Doc. 116, p. 45].

Respectfully, the R&R decision is wrong because Plaintiff's transfer claim was not a traditional pay claim, but instead, a discrimination claim based upon the transfer and the resulting change in her work schedule.  The ruling of the R&R essentially converts Plaintiff's discriminatory transfer claim into a traditional pay claim, finding that Plaintiff could argue that she was paid less than Mr. Quinn under the facts explained above.  The significance of this "conversion" of Plaintiff's claim is emphasized because Plaintiff did, in fact, plead a separate, traditional pay claim, and the R&R correctly concluded that the traditional pay discrimination claim was unfounded.  [Doc. 116, p. 53-56].  Plaintiff's claim relating to her transfer and reduction in hours from 40 per week to 32 hours per week was not a pay discrimination claim, but instead, a claim that her transfer and reduction in hours was due to her disability and her gender.  Of course, she would have known about this change in her work hours from the moment it took effect. Thus, under the analysis of the <u>Davis</u> court, since only traditional pay claims are

protected by the continuing action protection of the Lilly Ledbetter Act, Plaintiff's claim is time-barred.

## 2. All Identified Established Law Supports The Conclusion That Plaintiff's Claim Is Time-Barred

The R&R's finding that Plaintiff's transfer claim could be a continuing or accrued action is inconsistent with all of the case law identified by Defendants (including the Davis case), which hold that a change in schedule or work hours is a discrete act and is not a continuing action protected by the Lilly Ledbetter Act or otherwise.

In this regard, the Ledbetter Act provides, in relevant part, that "an unlawful employment practice occurs, with respect to discrimination in compensation…, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting whole or in part from such a decision or other practice." 42 U.S.C. §2000e-5(e)(3)(A).

Case law interpreting claims related to a reduction in work hours, both before and after the Ledbetter Act, all provide that a transfer with a reduction in

hours is a discrete act which accrues as of the date the Plaintiff learns of the reduction in hours.  Any ruling to the contrary is not supported in any known reported or unreported decision.  See Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1181 (10th Cir. 2011) ("hiring, firing, promotion, demotion and transfer decisions, though often touching on pay, should and do accrue" as soon as the employee is aware of the decision); Clayton v. Pa. Dept. of Welfare, 304 Fed. Appx. 104, 108 (3d Cir. 2008); Baird v. Outlook Pointe, 2008 WL 4287382, at *6 (M.D.Pa. Sept. 17, 2008) (reduction in hours is a discrete act of discriminatory conduct); Carter v. Susquehanna Police Dept., 2009 WL 1183415, at *5 (E.D. Pa. Apr. 30, 2009); Haggie v. TJX Companies, Inc., 2012 WL 2061806, at *2 (D.Mass. Jun 6, 2012); Kafka v. Grady, 2014 WL 4725399 at *7 (N.D. Ill. Sept. 23, 2014).  See also Meidling v. Walgreen Co., No. 8:12-CV-2268-T-30, 2014 WL 2700742, at *4 (M.D. Fla. June 13, 2014); Holland v. Dep't of Health & Human Servs., 51 F. Supp. 3d 1357, 1376 (N.D. Ga. 2014); Humphrey v. Sisters of St. Francis Health Servs., Inc., 979 F.Supp. 781, 787 (N.D. Ind. 1997); Scott v. Sioux City, Iowa, 68 F.Supp.3d 1022, 1034 (N.D. Iowa 2014) (plaintiff failed to exhaust claim related to reduction of hours from each week from 35 to 29 because reduction in work hours was a discrete act); see also Niwayama v. Texas Tech

Univ., 590 Fed.Appx. 651, 355-56 (5th Cir. 2015) (Ledbetter Act does not apply to denial of tenure, even if it affects pay).

Here, Plaintiff was transferred to the Women's Center in May of 2010. [Doc. 83-1 and 106-1, DSF 94, 97]. At that time, her hours were reduced from 40 to 32 each week.  [Doc. 83-1 and 106-1, DSF 98]. Plaintiff submitted her first EEOC charge on August 21, 2012, and an amended charge on August 30, 2012, both **more than two years underline after her transfer**. [Doc. 83-1 and 106-1, DSF 219-221]. Accordingly, Plaintiff's transfer claim is time-barred.

### 3. Even Under The Reasoning In The R&R Plaintiff's Claim Is Time-Barred

Finally, even assuming, *arguendo,* that Plaintiff's transfer claim could be considered a continuing action under the Ledbetter Act until the time that Plaintiff learned that Mr. Quinn was being paid for working 40 hours per week, the evidence is undisputed that Plaintiff was aware of the disparity between the hours she was paid for and the hours Mr. Quinn was paid for as of April 2011, approximately 17 months before she filed her first charge of discrimination.  (Pl. Dep. p. 149).  Thus, even under the Court's interpretation of the Davis decision, Plaintiff's claim is time-barred.

Therefore, Plaintiff's failure to file a charge of discrimination within 180 days of the time of her transfer (or when she purportedly learned that Mr. Quinn was paid for working 40 hours) means Plaintiff is barred from bringing any claim arising out of her transfer.

**B.      Plaintiff's Transfer Claim Is Time-Barred Because She Consented To Work Fewer Hours Beginning In November of 2010**

Finally, even assuming, *arguendo*, that Plaintiff's transfer claim is not time-barred based upon the reasons discussed above, the undisputed facts show that the only time period Plaintiff can complain about regarding her reduced 32-hour workweek is from May 2010 to November 15, 2010.  After November 2010, even Plaintiff agrees she wanted to work only a 32-hour workweek so she could leave early in the afternoons to spend time with her son.  [Doc. 83-1 and 106-1, DSF 108].  Nonetheless, the R&R concluded that Plaintiff may have merely asked to work different hours so that she could be home early (when her son arrived home from school), but that she did not necessarily want to work only 32 hours per week. Said another way, the R&R concluded that Plaintiff wanted to change her schedule, but that this was not necessarily "consent" to working only 32 hours.

However, the facts underlying the request for the schedule change belie this conclusion.  In this regard, Plaintiff testified that, beginning in November 2010,

9

she asked to leave work each day at 2:00 or 2:30 so that she could take her son to counseling, and because he was having issues at school so she needed to be home each day when school was over.  (Pl. Dep. 117:17-118:2; 119:18-120:8) (admitting that she did not find the schedule objectionable because "it worked out for our schedule.") Id. at 120:22-121:4.  Given she would leave at that time, it is axiomatic that she could not have worked a 40-hour work schedule.  Thus, Plaintiff's request to leave work early each day is tantamount to her requesting shorter working hours.  To conclude otherwise places semantics over substance - - a request to leave early which effectively reduces total work hours is exactly the same as asking for shorter hours.  Accordingly, the R&R erred because the reality is that Plaintiff consented to the lesser working hours, at least as of November 2010. Since Plaintiff's first charge of discrimination was not filed until August 2012, any claim arising out of her transfer and schedule change is time-barred because she consented to the change in her hours as of November 2010, approximately 22 months prior to the time she filed her  charge of discrimination.

### C. Plaintiff Cannot Establish A *Prima Facie* Case Of Discriminatory Transfer

The R&R correctly noted that Plaintiff "admitted" that she welcomed a transfer to the Women's Center, but that she nonetheless could establish a *prima facie* case of discrimination because she supposedly objected to her reduced hours

10

even though she was "thrilled" to accept the transfer to the Women's Center and because Plaintiff's hours were not dictated "exclusively" by the needs of the Women's Center.

Initially, there is no evidence to support the conclusion that the decision to reduce Plaintiff's work hours was not directly related to the anticipated needs of the Women's Center.  In this regard, it is undisputed that Plaintiff wanted to, and in fact did, work primarily at the Women's Center after her transfer.  [Doc. 83-1 and 106-1, DSF 98-99].  Thus, the R&R's conclusion that Plaintiff did not "consent" to the transfer despite her admitted desire to work at the Women's Center, with the result that she worked less hours, is misplaced.

In the same vein, the R&R's conclusion that Plaintiff's transfer could constitute an adverse action because Plaintiff now claims after the fact that she objected to the change in her hours simply is not supported by the evidence or a logical application of the undisputed facts.  As noted in Defendant's Reply Brief, the facts show that Plaintiff welcomed the transfer to the Women's Center, and was "thrilled" to accept the position at the Women's Center, even though she was aware that it carried with it reduced work hours.  [Doc. 113, p. 6-9; Doc. 106, p. 4; Doc. 106-1, DSF 93-94].  Plaintiff wanted to maximize working for her close friend, Dr. Bass, and minimize working with Dr. Forsyth, with whom she clashed.

[Doc. 106-1, DSF 86, 89].  Meanwhile, Dr. Forsyth repeatedly told Ms. Viscardi (prior to learning that Plaintiff had cancer or her taking leave) that he did not want to work with Plaintiff because of her performance issues. [Doc. 83-1 and 106-1, DSF 43-44, 48-49, 52].

Whether an employment action is "adverse" is an objective inquiry. Doe, 145 F.3d at 1449-1452. "[A] plaintiff must demonstrate that a reasonable person in [her] position would view the employment action in question as adverse." Id. at 1449. In this regard, a plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238-40 (11th Cir. 2001); see Doe, 145 F.3d at 1453.

Here, it is undisputed that Plaintiff agreed to and did not dispute her transfer since it served her own purposes.  [Doc. 83-1 and 106-1, DSF 86, 88-90, 93]. Plaintiff repeatedly had clashed with Dr. Paul Forsyth, the Medical Director. [Doc. 83-1 and 106-1, DSF 90].  On the other hand, she got along well and enjoyed working with her close, personal friend, Dr. Ed Bass, one of her other supervising Radiologists.  [Doc. 83-1 and 106-1, SF 89].  With the opening of the Women's Center, Dr. Bass was going to primarily work there.  [Doc. 83-1 and 106-1, DSF 86].

After some consideration, Ginni Viscardi reached the very reasonable decision to offer Plaintiff the opportunity to work primarily at the Women's Center under Dr. Bass, with a reduced schedule of 32 hours per week (due to the unknown workload of the Women's Center).  [Doc. 83-1 and 106-1, DSF 92, 94].  Ms. Viscardi also considered that she could hire Kevin Quinn as a new Radiology Assistant for the Women's Center, but he needed full-time employment to justify his daily commute from Gainesville.  Given these circumstances, Ms. Viscardi understandably concluded that placing Mr. Quinn full time at the Hospital and moving Plaintiff to the Women's Center was a prudent business decision.  When Ms. Viscardi called Plaintiff and presented her with this option, Plaintiff was "thrilled" and accepted it, knowing that she would work reduced hours. [Doc. 83-1 and 106-1, DSF 93-94].

Thus, the R&R erred when it concluded that Plaintiff suffered an adverse action sufficient to support a *prima facie* case of discrimination because the facts are undisputed that Plaintiff consented to the transfer, knowing it would include a reduction in work hours.  There simply is no evidence whatsoever that the transfer did not require a change in her work schedule.

**D.      The R&R Correctly Concluded That Plaintiff Cannot Establish Pretext Regarding Her Transfer Claim, But Failed To Identify Many Of The Additional Reasons Why Her Transfer Claim Fails**

The R&R correctly concluded that Plaintiff's claim arising out of her reduced work hours fails because it is undisputed that "Mr. Quinn was not willing to work part time" and, "although Plaintiff expressed concern about the cut in her hours, she did not outright refuse to work the part-time schedule." [Doc. 116, p. 51-53]. Thus, the R&R properly found that "Plaintiff…failed to produce sufficient evidence for a reasonable finder of fact to conclude that Defendants' proffered nondiscriminatory reason for reducing her hours in favor of Mr. Quinn was a pretext for sex or disability discrimination." [Doc. 116, p. 53].

The R&R, however, did not address that Plaintiff did not and cannot rebut the other legitimate, non-discriminatory reasons for transferring her to the Women's Center and changing her schedule accordingly. In this regard, in addition to the legitimate, unrebutted reasons identified in the R&R, it also is undisputed that Dr. Forsyth raised performance issues almost immediately after Plaintiff's employment began, and Ginni Viscardi even contemplated terminating her before her cancer diagnosis. [Doc 83-1 and 106-1, SF 43-44, 48-49, 52]. Ms. Viscardi eventually decided to transfer Plaintiff to the Women's Center based upon multiple reasons, including that Dr. Forsyth did not want to work with Plaintiff

(prior to her being diagnosed with cancer), Ms. Viscardi's knowledge that Plaintiff preferred to work with Dr. Bass, and Dr. Forsyth's preference to work with Kevin Quinn (who filled in beginning the first day she was on leave and later was hired to work full-time at the Hospital with Plaintiff's transfer to the Women's Center). [Doc. 83-1, 106-1, SF 77-79, 85, 87-89, 91-93].

Plaintiff also admitted that she wanted the transfer and enjoyed working with Dr. Bass.  [Doc. 106-1, SF 88, 93].  Thus, even if Plaintiff did not want a reduced work schedule, she has admitted the exact basis for Ms. Viscardi's legitimate and non-discriminatory decision. See Roberts v. Design Mfg. Services Inc., 167 Fed. Appx. 82, 86 (11th Cir. 2006) (no pretext where Plaintiff admitted engaging in misconduct that was reason for termination).

Therefore, although the R&R reached the correct conclusion that Plaintiff cannot bring a discrimination claim based upon her transfer, there also are other unrebutted reasons that support this conclusion.

### E.       Conclusion

For the foregoing reasons, Defendants respectfully request that this Court reject the portions of the R&R concluding that Plaintiff's transfer claim is not time-barred, and that Plaintiff could support a *prima facie* case related to her transfer claim.  Further, there are additional legitimate, unrebutted reasons supporting the

denial of Plaintiff's transfer claim.  In summary, Defendants request that the Court uphold the Magistrate's Report and Recommendation finding that Plaintiff's claims fail as a matter of law, and issue an Order dismissing this case with prejudice.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**


*/s/ Benton J. Mathis, Jr.*
Benton J. Mathis, Jr.
Georgia Bar No. 477019
Martin B. Heller
Georgia Bar No. 360538

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: bmathis@fmglaw.com
E: mheller@fmglaw.com

## LOCAL RULE 5.1 CERTIFICATION

I certify that the foregoing **DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** has been prepared in compliance with Local Rule 5.1 (Times New Roman, 14 point font).

/s/ Benton J. Mathis, Jr.
Benton J. Mathis, Jr.
Georgia Bar No. 477019

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: bmathis@fmglaw.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **DANIELLE SNODGRASS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIVIL ACTION FILE** |
| **v.** | ) **NO. 1-13-CV-03958-AJB-SCJ** |
| | ) |
| **INDEPENDENT PHYSICIANS** | ) |
| **RESOURCE, INC. AND** | ) |
| **APOLLOMD, INC.** | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT**

**AND RECOMMENDATION** to the Clerk of Court using the CM/ECF system,

which will automatically send electronic mail notification of such filing to counsel

of record who are CM/ECF participants.  Counsel of record are:

Rachel Berlin                     Cheryl B. Legare
The Buckley Law Firm, LLC         Legare Attwood and Wolfe, LLC
1230 Peachtree Street, N.W.       400 Colony Square, Suite 1000
Suite 900                         1201 Peachtree St. NE
Atlanta, Georgia 30309            Atlanta, Georgia 30361


This 7th day of January, 2016.

/s/ Benton J. Mathis, Jr.
Benton J. Mathis, Jr.
Georgia Bar No. 477019

18

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: bmathis@fmglaw.com